UNITED STATES OF AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN LYNGAAS, D.D.S., on
behalf of himself and others
similarly situated,

Plaintiff,                                                    2:16 CV 12539

vs.

STARMOUNT LIFE INSURANCE
CO., INC., ALWAYSCARE
BENEFITS, INC., and DOES 1-10

Defendants.

## COMPLAINT - CLASS ACTION

*Plaintiff is not aware of any related cases.*

### Introduction

1.  Plaintiff, Brian Lyngaas, D.D.S., on behalf of himself and all others similarly situated, brings this complaint against Starmount Life Insurance Co., Inc., and Alwayscare Benefits, Inc., for violations of the Telephone Consumer Protection Act and the common law.

2.  In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing ... can

1

be an intrusive invasion of privacy." 47 U.S.C. § 227, Congressional Statement of Findings #5.

3. In enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimiles, hereinafter "Junk Faxes". 47 U.S.C. § 227.

4. Unsolicited facsimile advertising damages the recipients. A recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited facsimiles prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

5. Plaintiff, Brian Lyngaas, D.D.S. is a is a dentist who has long been inundated with Junk Faxes. Plaintiff brings this class action to challenge the Defendants' transmission of Junk Faxes in violation of the TCPA.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331, and supplemental jurisdiction under 28 U.S.C. §1367. *Mims v. Arrow Financial Services, LLC.,* 132 S.Ct. 740 (2012); *Charvat* v. *Echostar Satellite, LLC,* 630 FJd 459 (61h Cir., 2010).

7. This Court has personal jurisdiction over defendants because they

have transacted business in the United States, including in Michigan. Defendants have also done tortious acts in Michigan including the transmission of unlawful communications into the state.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantia portion of the facts and circumstances that give rise to the cause of action occurred here, as the defendant(s) sent the challenged Junk Faxes to this District.

## PARTIES

9. The plaintiff, Brian Lyngaas, D.D.S., is a dentist. He is a resident of Michigan, and his dental practice is located at 18518 Farmington Road, Livonia, Michigan, 48152.

10. Defendant Starmount Life Insurance Co., Inc., ("Starmount Life") is a Louisiana Corporation with headquarters at 8485 Goodwood Blvd., Baton Rouge, Louisiana, 70806.

11. Defendant Alwayscare Benefits, Inc. ("Alwayscare"), is a Louisiana Corporation with headquarters at 8485 Goodwood Blvd., Baton Rouge, Louisiana, 70806.

12. Does 1-10 are other natural or artificial persons who have involved in committing for violations alleged in this Complaint.

13. Starmount Life is an individual life and health insurance carrier. It partners with Alwayscare which offers life, health insurance, and ancillary insurance.

14. Alwayscare and Starmount Life each describes the other as a "sister company" on their respective websites. (See **Exhibits 1 and Exhibit 2**)

15. At all relevant times the defendants were engaged in a joint venture or joint enterprise relative to the activities challenged herein.

## FACTS

16. Plaintiff's claims, and those of the class he seeks to represent, arise under the TCPA, which provides strict liability for violations of its provisions regarding Junk Faxes.

17. Among other provisions, the TCPA forbids Junk Faxes- sending unsolicited advertisements for goods and services via facsimile. 47 U.S.C. §227(b)(l)(C):

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States- (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless-
>
> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
> (ii) the sender obtained the number of the telephone facsimile

machine through-

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, and

(III) the unsolicited advertisement contains a notice meeting the requirements under paragraph 2(D).

18. An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

19. The TCPA requires that even fax advertisements being sent to those who consented to their receipt, or with whom the advertiser had an established business relationship, must include an Opt Out Notice. 47 U.S.C. §227(b)(l)(C)(iii) and 227(b)(2)(D).

20. The Opt Out Notice provision requires the sender to include a clear and conspicuous notice on the front page of the fax that recipients may request that the sender stop sending them fax advertisements - and that failure to remove the recipient from the sender's database within thirty days of such a request is itself a violation of the TCPA, and the statutorily required content of such a request.

21. Section §227(b)(3) of the TCPA provides a private right of action:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each violation, whichever is greater, or (C) both such actions.

22. Pursuant to §227(b)(3), if the court finds that the defendant(s) willfully or knowingly violated the TCP A or its regulations, the court may award treble damages.

## FACTUAL ALLEGATIONS

23. On or about January 25, 2016, defendants sent a fax advertisement to plaintiff touting a system whereby medical providers can receive patient insurance information via fax. **(Exhibit 3)**

24. This unsolicited fax sent to plaintiff was an advertisement of the commercially availability of defendants's goods and/or services.

25. The fax invites the reader to access websites: (a) www.alwayscarebenefits.com, issued to Starmount, (b) www.alwaysassist.com, issued to Starmount.

26. Discovery may reveal the transmission of additional faxes as well.

27. The fax stated that the advertised faxes would come from Alwayscare,

however both Starmount Life's and Alwayscare's names and logos are on the top and bottom of the fax.

28. This fax advertisement is a form document, addressed to recipients with the preface "Want patient info fast? Get it with a fax!".

29. Plaintiff did not consent to receive fax advertisements from defendant.

30. Plaintiff did not have an established business relationship with defendant.

31. The Junk Fax form does not contain an Opt Out Notice that complies with the TCPA, including 47 U.S.C. §227(b)(l)(C)(iii) and 227(b)(2)(D).

32. Defendants sent and continues to send this form Junk Fax to dentists and other parties throughout the United States.

33. Said Junk Faxes uses the paper and ink and toner of the plaintiff and class members without their consent.

34. Further, said Junk Faxes impose a cost on the plaintiff and class members by wasting their time and impeding the free flow of commerce. *American Cooper Brass* v. *Lake City Indus. Prods.,* 757 F.3d 540 (6th Cir. 2014).

## CLASS ALLEGATIONS

35. Plaintiff brings this action under Fed. R. Civ. P. 23 for violations of the TCPA on behalf of himself and others similarly situated.

36. Through the transmission of generic fax advertisements promoting their goods and services, including the Junk Faxes sent to plaintiff, defendants have engaged in wholesale violations of the TCPA.

37. Based on the generic style of the Junk Faxes, the standard telemarketing reach of a Junk Fax campaign, and the geographic distance between plaintiff's Michigan office and Starmount's Louisiana location, defendants have likely transmitted Junk Faxes to thousands of recipients throughout the United States.

38. Defendants did not obtain the consent of Junk Fax recipients prior to sending the faxes.

39. To the extent facsimile advertisements were transmitted by defendants to those who had given consent, or had an established business relationship with it/them, of which there is no evidence at this time, the facsimile advertisements still violate the TCPA, as they did not contain the Opt Out Notice required by law.

40. The class of persons plaintiff seeks to represent for the TCPA claim is composed of all persons or entities who:

>   (a) were sent faxes by or on behalf of any of the defendants promoting their goods or services for sale; and
>
>   (b) said faxes did not contain an opt out notice as described in 47 U.S.C. §227; and,

(c) said faxes were sent on or after a date four years prior to the filing of this action through the date of class certification.

41. The class of persons plaintiff seeks to represent for his conversion, trespass to chattel, and private nuisance claims, is composed of all persons or entities who:

(a) were sent faxes by or on behalf of any of the Defendants promoting their goods or services for sale;

(b) into Michigan; and

(c) said faxes did not contain an opt out notice as described in 47 U.S.C. §227; and,

(d) said faxes were sent on or after a date three years prior to the filing of this action through the date of class certification.

42. The classes defined above are identifiable by Starmount and its agents from the databases used to send the Junk Faxes.

43. There are questions of law and fact common to plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether defendants violated the TCPA by engaging in unsolicited fax advertising;

    b. Whether the facsimiles sent by defendants to class members constitute unsolicited advertisements;

    c. Whether the facsimiles sent by defendants to plaintiff and class members failed to contain the required Opt Out Notice;

  d. Whether the facsimiles sent by defendants to plaintiff and class embers constitute a conversion of property;

  e. Whether the facsimiles sent by defendants to plaintiff and class members constitute a trespass to chattel;

  f. Whether the facsimiles sent by defendants to plaintiff and class members constitute a private nuisance; and,

  g. Whether plaintiff and the members of the class are entitled to statutory damages and injunctions as a result of defendant's actions.

44. Plaintiffs claims are typical of the claims of the classes. All received facsimiles from defendant violated the TCPA.

45. These common questions of law and fact predominate.

46. The classes are so numerous that joinder of Junk Fax recipients is impracticable in this case, thus a class action is superior to other available means for the fair and efficient adjudication of this controversy.

47. Plaintiff is an adequate representative of the classes because his interests do not conflict with those of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions involving unlawful business practices.

48. Common questions of law and fact predominate over questions affecting only individual class members and a class action is the superior method for the fair and efficient adjudication of the controversy. The only individual

question concerns identification of class members and the number of Junk Faxes received by each member, which will be ascertainable from records maintained by Starmount and/or its/their agents.

49. There are no unusual legal or factual issues which would cause management problems not normally and routinely handled in class actions.

50. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, which would most likely exceed the damage award in an individual case.

51. Numerous courts have certified class actions under the TCPA. *American Copper,* supra; *Machesney v. Lar-Bev of Howell, Inc.,* 2016 WL 1394648, at *19 (E.D.Mich., 2016); *Avio, Inc. v. Alfoccino, Inc.,* 311 F.R.D.434 (E.D.Mich., 2015); *Holtzman v.Turza,* 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009), aff din relevant part, 728 F.3d 682 (7th Cir. 2013); *CE Design Ltd. v Cy's Crabhouse North, Inc.,* 259 F.R.D. 135(N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.,* 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455(La. App. 1st Cir. 2007); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok. App. 2006); *ES! Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. (App.) 94, 50 P.3d844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547

(Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S. W.3d 577 (Mo. App. 2010).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE TCPA

52. The above paragraphs are incorporated herein.

53. Defendant caused Junk Faxes promoting its goods and services to be sent to plaintiff and class members, in violation of the TCPA.

54. By sending Junk Faxes to the class without their consent and/or without any established business relationship, Starmount violated class members' privacy rights.

55. By sending Junk Faxes to the class, Starmount caused class members to sustain property damage and cost in the form of paper and toner.

56. By sending Junk Faxes to the class, Starmount interfered with the class members' use of their property, as class members' facsimile machines were encumbered by the transmission of defendants's Junk Faxes.

57. Defendant failed to provide the requisite Opt Out Notice on its Junk Faxes.

58. Failure to provide Opt Out Notice on a facsimile advertisement is a

separate and distinct violation of the TCPA.

59. Defendant's violations of the TCPA were knowing and/or willful.

60. The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of its terms, plus treble damages if the violation is willful or knowing.

61. The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

62. Plaintiff, on behalf of the class, respectfully petitions the Court to order defendant to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## COUNT II
## CONVERSION

63. The above paragraphs are incorporated herein.

64. Immediately prior to the sending of the Junk Faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

65. By sending the Junk Faxes, defendant appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

66. Defendant knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

67. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the Junk Faxes.

68. Defendant should be enjoined from committing similar violations.

## COUNT III
## TRESPASS TO CHATTELS

69. The above paragraphs are incorporated herein.

70. Plaintiff and the class members were entitled to immediate possession of the equipment they used to receive faxes.

71. Defendant sending plaintiff and the class members Junk Faxes interfered with their use of the receiving equipment and deprived them of the use of the equipment for a substantial time, and thus constitutes a trespass to such equipment.

72. Defendant acted either intentionally or negligently in engaging in such conduct.

73. Plaintiff and each class member suffered damages as a result of receipt of the Junk Faxes.

74. Defendant should be enjoined from continuing similar trespass.

## COUNT IV
## PRIVATE NUISANCE

75. The above paragraphs are incorporated herein.

76. Plaintiff and class members had property rights and privileges in the equipment and paper and ink/toner they used to receive faxes.

77. Defendant's sending plaintiff and class members Junk Faxes was an invasion of their property causing significant harm and constitutes a private nuisance.

78. Defendant's invasion of this property was intentional and unreasonable.

79. The interference with plaintiff's and the class members' communications equipment and supplies was unreasonable.

80. In the alternative to the above averment, defendant's invasion of this property was unintentional but negligent.

81. Congress determined, in enacting the TCPA, that the prohibited conduct constituted private nuisances and intrusive invasions of privacy. *Universal Underwriters Ins. Co. v. Loui Fusz Automotive Network, Inc.* 401 F.3d 876 (8th Cir. 2005). Further, fax advertisements have heightened intrusiveness. *Id.*

82. Plaintiff and class members are entitled to both damages and an order that the nuisance be abated. MCL 600.2940(2)

### PRAYER FOR RELIEF

WHEREFORE, on behalf of himself and members of the class and subclass, plaintiff prays for the following relief:

83. That the defendants be enjoined from engaging in future telemarketing in violation of the TCPA;

84. That this Court certify the claims of Plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure;

85. That plaintiff and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by the defendants and $1,500 for each willful or knowing violation;

86. That plaintiff and the other members of the class action so certified be awarded actual damages for conversion, trespass to chattel, and private nuisance.

87. That the Court enter an appropriate order enjoining the defendants, their agents, and anyone acting on their behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer

disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom defendants have transmitted unsolicited facsimile advertisements;

      88.    Attorneys' fees and costs of suit; and.

      89.    Such other and further relief as is just and equitable under the circumstances.

                                                        /s/ Cathleen M. Combs
                                                        Cathleen M. Combs

Cathleen M. Combs
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

                                                        /s/ Richard Shenkan
                                                       Richard Shenkan

Richard Shenkan
SHENKAN INJURY LAWYERS, LLC.
6550 Lakeshore Street
West Bloomfield, Michigan 48323
(800) 601-0808
(888) 769-1774 (FAX)